STEVEN G. KALAR
Federal Public Defender
JODI LINKER
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Telefacsimile: (415) 436-7706

Counsel for Defendant BOLDS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-11-0697 CRB |
| Plaintiff, | DEFENDANT'S SENTENCING MEMORANDUM |
| v. | Date: August 6, 2014 |
| RODERICK HAROLD BOLDS, | Time: 2:00 p.m. |
| Defendant. | Court: The Honorable Charles R. Breyer |

After over three years of litigation, Mr. Bolds now appears before the court for sentencing. As the Court is well aware, on October 31, 2012, defendant Roderick Bolds entered into a plea agreement with the government to resolve the above-referenced case. Under the terms of that agreement – in light of the full range of conduct alleged – the parties jointly agreed to recommend a sentence between 9 and 11 years. Mr. Bolds later withdrew his plea of guilty and exercised his constitutional right to proceed to trial. At trial, he was convicted of some but not all of the allegations against him. Undoubtedly, however, the evidence at trial was much more favorable to Mr. Bolds than the government had proffered pre-trial. Indeed, one of the government's lead witnesses, and the witness whose statements *pretrial* contained some of the most egregious allegations against Mr. Bolds, was shown to be completely fabricating her version of the events. Nonetheless, the government now seeks a sentence of 30 years imprisonment! Three times the sentence it agreed to pretrial and beyond the pale of any reasonable sentence.

A question often present at a sentencing hearing is the following: what happened in the defendant's life that got him to the place where he is today? The letters that have been submitted by his family, which provide the most detailed and clear explanation of how Mr. Bolds is where he is today. If the Court does nothing else, it should take the time to read each of those letters in full. Upon doing so, it will be evident that, in light of all of the factors under 18 U.S.C. § 3553(a) and the applicable mandatory minimums, a sentence of ten years imprisonment is more than sufficient in this case. Such a sentence is higher than was possible under his original deal (9 years) and achieves all of the sentencing goals without being an excessive and unnecessary punishment.

**BACKGROUND**

**I. MR. BOLDS SUFFERED A TUMULTUOUS AND DIFFICULT UPBRINGING MARRED BY POVERTY AND NEGLECT BUT GUIDED BY HIS CONCERN AND CARE FOR HIS SISTERS**

The PSR summarizes Mr. Bolds incredibly difficult upbringing. What is clear from that background is that Mr. Bolds was abandoned and left to fend for himself at a young age. As a means of survival, he learned how to hustle to get what he needed. But what is important to

recognize – and what is so clearly illustrated by the letter from his sister Kelli Dunnaway – is that Mr. Bolds' primary goal in those efforts was to provide food, clothing, shelter and support to his younger sisters. He did everything possible to make sure that they went to school, stayed out of trouble, and had their needs met. His sister has no doubt that she would not be a police officer today had it not been for the sacrifices and efforts made by Mr. Bolds to raise her.

More profound then any characterization of Mr. Bolds' upbringing, are those first hand accounts presented by his sister, father and grandfather in their letters to the Court. Linker Decl., Ex. A, B & C. Mr. Bolds will not repeat those statements here and implores the Court to read those letters in their entirety. They are a moving and compelling account of Mr. Bolds' personal history.

## II. THE EVIDENCE AT TRIAL SHOWED FAR LESS EGREGIOUS OFFENSE CONDUCT THAN PROFFERED BY THE GOVERNMENT PRETRIAL

The testimony at trial revealed the following: By the time Mr. Bolds and SG met in July 2011, SG had run away from an abusive home and an abusive family. She had been abused by a family member at home, and rather than stay at home and continue to suffer, she ran away from home. She was then placed in a group home, but she did not want to stay there either so she ran away from the group home. She was living on the streets, and by the time she met Mr. Bolds in July 2011, she had been living on the streets for months.

She earned money living on the streets to support herself and her dog; and she also found a way to support her addiction to methamphetamine – an addiction that she had long before she met Mr. Bolds. She was deep in the throws of that addiction when she met Mr. Bolds. They met when she was walking the streets of Reno late one night on her own. *She approached him* and asked him for a cigarette; they started talking and they instantly hit it off.

She told him she had graduated from high school. She told him she was eighteen. She told him she was homeless and living on the streets. When Mr. Bolds invited SG back to his hotel room after talking for only a few minutes, she readily agreed. She was intrigued by him and interested in him. She also was interested in getting her next fix. They hung out together in the hotel room and talked. She told him about the difficulties that she had at home and all she

had been through. She explained how all of this had led to her running away and living on the streets. He also told her about his struggles and what he had been through.

SG wanted to smoke some methamphetamine, so she brought him to her drug dealer so he could buy her meth. She was already a heavy addict and knew where and how to get her drugs. When Mr. Bolds talked to her about needing to go back to Oakland the next day, she agreed to go. She had nothing in Reno to keep her there and lots that she wanted to run away from. The video of her getting on and off the greyhound bus shows that she went completely voluntarily to Oakland – she was walking on her own and not seeking help from any of the numerous people around here.

When they arrived in Oakland, they went to the apartment where Mr. Bolds had been living with his cousin. It was a small, run down apartment, but the apartment where Mr. Bolds had been residing from some period of time. The bars on the windows and special locks on the doors were *not* to keep SG in the house, but were the normal security measures in that rough neighborhood. None of these locks and bars prevented SG from leaving if she had wanted to.

Just as she had in Reno, she needed to make some money to get by, so did what all too many desperate people do when they have few choices and need to make some money – she sold the one thing she had, her body. She did not do this because Mr. Bolds made her and she did not do this because he forced her or coerced her; she did this because she needed to make money to support her drug habit and her life.

After just about a week in the Bay Area, she got arrested for prostituting. Just as she had done with everyone, including Mr. Bolds, she lied to the police about her age – she told them she was 18, she gave a fake date of birth and a fake name. She persisted in those lies. Only after being confronted about her true identity by the police did she finally come clean with them about her real identity.

### III. PROCEDURAL BACKGROUND

On July 11, 2011, "S.G." was arrested by the San Francisco Police Department ("SFPD") for loitering for the purpose of prostitution. On July 21, 2011, Mr. Bolds was arrested by Alameda County authorities for a violation of parole based on the instant offense conduct. On

September 27, 2011, Mr. Bolds was charged in the instant two count indictment with a violation of 18 U.S.C. § 1591(a), sex trafficking of children or by force, and 18 U.S.C. § 2423(a), transportation of minor with intent to engage in prostitution. He was writted over from state custody, and made his initial appearance on the federal indictment on October 13, 2011. While Mr. Bolds has been in continuous custody since July 21, 2011, because the first six months of his time in custody will apply to his parole violation for the same offense conduct, he will get no credit from the Bureau of Prisons for that six months in custody unless the Court reduces his sentence by six months.

On October 31, 2012, after a settlement conference with a magistrate judge, Mr. Bolds pleaded guilty to a superseding information charging him with a violation of 18 U.S.C. § 1594(c), conspiracy to engage in sex trafficking of children, pursuant to a plea agreement with the government (ECF Document 55). That agreement provided that the parties would each recommend a sentence between 110 months and 137 months. *Id*. On August 8, 2013, the Court granted Mr. Bolds' motion to withdraw his plea of guilty. The matter proceeding to trial.

On December 12, 2013, the jury returned its verdict. Mr. Bolds was convicted of one count of sex trafficking of a minor in violation of 18 U.S.C. § 1591 (Count 1) and one count of transportation of a minor for purposes of prostitution (Count 2) in violation of 18 U.S.C. § 2423. As to the violation of section 1591 in Count 1, the jury reached a unanimous guilty verdict as to one means of violating that statute (regarding the victim's age), but in failing to return a unanimous verdict as to the other means of violating that statute (whether force fraud or coercion was used), he was acquitted of that aspect of the charge. Each of the two counts of conviction, § 2423 & § 1591, carry a ten year mandatory minimum term of imprisonment. *Importantly, however, because he was not convicted of using force fraud and coercion, the fifteen year mandatory minimum does not apply. See* 18 U.S.C. § 1591(b).

///

///

///

///

# ARGUMENT

## I. A SENTENCE OF TEN YEARS IMPRISONMENT IS SUFFICIENT TO ACHIEVE THE GOALS OF SENTENCING

In sentencing Mr. Bolds, this Court must consider *all* of the directives set forth in 18 U.S.C. section 3553(a); the sentencing guidelines are only one factor among many to be considered by the Court. *See United States v. Booker*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007). "The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary" to achieve the goals of section 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotations omitted). Those goals include the need to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes; and to provide the defendant with needed educational or vocational training, medical care, or other correctional. 18 U.S.C. § 3553(a)(2). Section 3553(a) directs the court to consider a number of additional factors, including the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, § 3553(a)(1); the kinds of sentences available, § 3553(a)(3); the sentencing guideline range, § 3553(a)(4); pertinent Sentencing Commission policy statements, § 3553(a)(5); the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and, the need to provide restitution to any victims of the offense, § 3553(a)(7). the court is required to consider all of the factors under 18 U.S.C. § 3553(a), and not just the guidelines.

### A. The Offense Level is *Not* Based on Empirical Evidence and Should Not Be Relied Up by The Court

The PSR calculates Mr. Bolds offense level as 34 and criminal history category as VI. The offense level, however, should be given no weight by the Court because it was established based on the statutory mandatory minimum enacted by Congress and is *not based on empirical evidence*.

The Supreme Court has repeatedly emphasized the importance of empiricism in promulgating Sentencing Guidelines. *See Rita v. United States*, 551 U.S. 338, 349 (2007); *Gall v. United States*, 552 U.S. 38, 46 & n. 2; *Kimbrough v. United States*, 552 U.S. 85 (2007). When

developing the original Guidelines, the Sentencing Commission, unable to reconcile the varied and occasionally contradictory goals of federal sentencing, eschewed philosophical debate in favor of an objective examination of past sentences. *Rita*, 551 U.S. at 349. It thus adopted "an 'empirical approach,' beginning with an empirical examination of 10,000 presentence reports setting forth what judges had done in the past and then modifying and adjusting past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like." *Rita*, 551 U.S. at 349 (citing U.S.S.G. Ch. 1, Pt. A(3) (1988)).

When the Commission follows these steps – relying on past practice, then reviewing and revising the guidelines in response to data and feedback from judges and others in the field – then it may be "fair to assume" that the guideline "reflect[s] a rough approximation" of sentences that "might achieve 3553(a) objectives," if the case is "typical." *Rita*, 551 U.S. at 349. However, when a guideline is not the product of "empirical data and national experience," it is not an abuse of discretion to conclude that it fails to achieve the § 3553(a)'s purposes, "even in a mine-run case." *Kimbrough*, 552 U.S. at 109-10. Indeed, a district court commits procedural error when it ignores a *Kimbrough* argument and fails to appreciate its discretion to vary from a guideline based on a categorical policy disagreement with it. *See United States v. Henderson*, 649 F.3d 955, 964 (9th Cir. 2011).

Here, the base offense level of 30 under U.S.S.G. § 2G1.3(a)(2) is based solely upon the mandatory minimum statute provided by the statute and is not based on any empirical evidence. For example, section 1591(b)(1) mandates a minimum sentence of 15 years in prison and USSG 2G1.3(a)(1) fixes the base offense level at 34 (which carries a sentence of 12.5 to 15.5 years for Category I offenders). The base offense level for conspiracy is 24, which was the base offense level set when the mandatory minimum sentence was five years. See USSG Appendix C, Amendment 664 at 60 ("Third, this amendment creates a new guideline, §2G1.3 … to specifically address offenses under chapter 117 of title 18, United States Code …. This new guideline has a base offense level of level 24 to account for the new mandatory minimum terms of imprisonment established by the PROTECT Act."); Amendment 701 (adding levels 34, 30, and 28 to accommodate new congressional mandatory minimum sentences required by section

1591).

Additionally, any sentencing done since the enactment of this Guideline section would be unfairly skewed by the artificially inflated offense level making it nearly impossible to ascertain what sentences would normally be imposed absent the unjust elevated offense level. In the end, the Court must do its own evaluation of the § 3553(a) factors in this particular case to determine what a fair and reasonable sentence is since the Guidelines utterly fail at that task.

B. **A Sentence of Ten Years Would Avoid Unwarranted Disparities in Sentencing**

Just this week, the Honorable Edward M. Chen sentenced two defendants in a similar case, *United States v. Jackson, et al,* Case No. 13-363 EMC. In that case, the defendants admitted to conspiracy to engage in sex trafficking of minors that included a great deal of physical force. There, Judge Chen sentenced one defendant to 50 months and the other to 18 months. In another case in this district, Chief Judge Wilken ordered that a defendant by granted post-plea diversion on a similar charge of sex trafficking of a minor. *See United States v. Samantha Lewis,* Case No. 13-315 CW. In yet another similar case in this District, *United States v. Singh et al*, Case No. 11-0883 PJH, the Honorable Phyllis J. Hamilton sentenced each of the two defendants to terms of 108 months imprisonment. Thus, a ten year sentence would be greater than other similarly situated defendants and would help to avoid unwarranted disparities in sentencing.

C. **Mr. Bolds Conduct is Not the Primary Focus of the Federal Law and the Associated Penalties**

While the charge against Mr. Bolds is referred to as "Sex Trafficking of a Minor," which sounds as the most ominous and egregious of charges, let us not be mistaken that this is a pimping case. It is a pimping case just like the thousands of pimping cases that come through state courts on a daily basis. The difference here was the line between California and Nevada – indeed, had this offense occurred solely in California, and Mr. Bolds not gone the 13.4 miles from the border of California into Reno, this would not be a federal offense. That is not to minimize the seriousness of the offense. It is, of course, an incredibly serious offense; however, it is not the "human trafficking" that Congress was most concerned about in enacting the statute

and its penalties. See H.R. CONF. REP. 106-939, 89 ("Section 2 of the House bill also includes findings to the effect that every year millions of people, predominantly women and children, are trafficked within or across international borders; that many victims are trafficked into the international sex industry, often through force, fraud, or coercion; that trafficking in persons is not limited to sex trafficking, but often involves forced labor and other violations of human rights; that trafficking is a growing transnational problem that is increasingly perpetrated by organized criminal enterprises; that existing legislation and law enforcement in the United States and abroad are inadequate to deter trafficking, bring traffickers to justice, and meet the safe reintegration needs of trafficking victims; that in some countries, anti-trafficking efforts are hindered by official indifference, corruption, and sometimes even official participation in trafficking; that trafficking in persons is a matter of pressing international concern, and that the United States must work bilaterally and multilaterally to abolish trafficking and protect trafficking victims.")

Moreover, as the evidence at trial showed: SG was the one who first approached Mr. Bold; he was not out looking to find her. She told him she was 18 and repeated that to him and everyone else she met, including the officers who eventually arrested her. She willingly came back to his hotel room with him, and then went with him to Oakland on her own volition. The video at the greyhound station, as well as SG's own testimony, make that very clear. Moreover, as she stated when she was first arrest and as she affirmed at trial: *she decided* to prostitute after she and Mr. Bolds discussed the fact that doing so would enable her to buy dope, have her hair done, and buy new clothes, shoes and makeup. Even the government must concede that Mr. Bolds is not alleged to be the violent "gorilla pimp," who regularly beats up the women working for him as a means of control, as is often seen in these types of cases.

These facts are also confirmed in the letter from Thessalonica Jackson. Linker Decl., Ex. D. While Ms. Jackson did not testify at trial, she has provided a letter for sentencing purposes to express her perspective on how she was treated by Mr. Bolds and what she saw between Mr. Bolds and SG. *Id*. Amongst other things, Ms. Jackson stated the following:

Roderick never showed me a violent side and I never saw him get violent with Sara or

anyone else. Sara never told me she wanted to leave and she could leave the house when she wanted to. I eventually left because I wanted to move.

*Id*.

In short, Mr. Bolds individual conduct is not worthy of a sentence any higher than 10 years.

## II. A SENTENCE SIGNIFICANTLY HIGHER THAN THAT AGREED TO BY THE GOVERNMENT IN THE ORIGINAL PLEA AGREEMENT WOULD VIOLATE MR. BOLDS' SIXTH AMENDMENT RIGHT TO TRIAL

A criminal defendant may not be subjected to more severe punishment for asserting his right to stand trial. *United States v. Medina-Cervantes*, 690 F.2d 715, 716 (9th Cir.1982); *United States v. Stockwell*, 472 F.2d 1186, 1187 (9th Cir. 1973). The government's request for a sentence of 30 years reflects a clear violation of Mr. Bolds Sixth Amendment right to trial as it is *three times* the sentence the government asserted was reasonable prior to trial, even though the evidence undoubtedly came in more favorably to Mr. Bolds than was anticipated before trial. Indeed, the jury did not agree with the government on the most serious allegation against Mr. Bolds – that he used force, fraud or coercion to cause SG to engage in prostitution. Moreover, the government's witness for the most serious allegations against Mr. Bolds, Chanell Rensch, was clearly not telling the truth. While the government discussed Ms. Rensch a great deal before trial, since she was actually placed under oath and subjected to cross-examination, the government has not relied on her statements at all. In short, the facts that are now known after trial reveal that the situation, and Mr. Bolds' conduct, was not as egregious as believed pretrial. As such, Mr. Bolds' sentence should reflect that new understanding of the facts.

## III. A SENTENCE MORE THAN TEN YEARS WOULD BE AN ANOMALY AND WOULD NOT COMPORT WITH ALL OF THE § 3553(a) FACTORS

As explained above, Mr. Bolds had an incredibly difficult upbringing. His mother was addicted to drugs in a way that made her unable to care for her children and she died of AIDS at a young age. His father was never present for him in any significant way. He had no meaningful parental support and was left to care for himself and his sisters. He did the best he could, and as his sister explains, he did right by her: making sure she got an education and had all of the opportunities that he did not have. With his efforts, she now finds herself as a successful police

officer in New Orleans, Louisiana, while he finds himself facing a lengthy stretch in federal prison. His lack of any guidance and his remarkable efforts to provide for his sisters are extraordinary and worthy of consideration by the Court. The letters from Mr. Bolds' family show that Mr. Bolds is a more complicated and caring individual than he appears from his offense conduct and criminal history.

Moreover, a sentence of ten years imprisonment will be a dramatic escalation in punishment for Mr. Bolds, and adequately reflects the seriousness of the offense, promotes respect for the law and provides adequate deterrence. One has to question what purpose would be served for a sentence longer than ten years. Ten years – 120 months – is an incredibly long period of time. Statistics from the United States Sentencing Commission reveal that the average sentence in all federal offenses in fiscal year 2013 was 45 months; the average sentence in sexual assault cases was 137 months; and, the average in child pornography cases was 136 months. U.S.S.C.'s 2013 Sourcebook of Federal Sentencing Statistics, Table 13, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2013/Table13.pdf.[1] In the Northern District of California, the average sentence in 2013 for all offenses was 52 months. Northern District of California Sentencing Statistics 2013, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2013/stats_CAN.pdf. This shows how dramatic – and incredibly severe – a sentence of 120 months imprisonment would be.

---

[1]It appears that "sex trafficking of a minor" would must likely be included in the U.S.S.C.'s statistics for child pornography. The 2013 sourcebook states the following:
> Pornography/Prostitution includes dealing in obscene matter, transportation of minor for prostitution, transportation for prostitution/sex (adult), sexual exploitation of minors, materials involving sexual exploitation of minors, obscene telephone or broadcasting, and selling or buying children for pornography. This primary offense category was discontinued in fiscal year 2010. Some of the offenses that were grouped into this primary offense category in prior fiscal years are grouped into the Child Pornography primary offense type. All other offenses that were grouped into this primary offense category in priorfiscal years are included in the Other Miscellaneous Offenses primary offense category.

U.S.S.C.'s 2013 Sourcebook, Appendix A, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2013/Appendix_A.pdf

# CONCLUSION

For the foregoing reasons, defendant Roderick Bolds submits that a sentence of ten years imprisonment is sufficient to achieve the goals of sentencing pursuant to 18 U.S.C. § 3553(a).

Date: July 31, 2014

Respectfully submitted,

*/s/ Jodi Linker*